26046. HENDERSON v. THE STATE.

ARGUED SEPTEMBER 17, 1970—DECIDED DECEMBER 3, 1970—
REHEARING DENIED DECEMBER 17, 1970.

*Charles M. Clayton, Louise T. Hornsby,* for appellant.

*Richard Bell, District Attorney, Eugene Highsmith, Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Marion O. Gordon, Assistant Attorney General, Charles B. Merrill, Jr., Deputy Assistant Attorney General,* for appellee.

HAWES, Justice. Tommy Lee Henderson was indicted in the Superior Court of DeKalb County in a 3-count indictment charging him with kidnapping, murder and rape. On his arraignment he pled not guilty. Upon the call of the case for trial, the defendant filed a motion to require the State to elect upon which of the charges it would try the defendant. The court sustained the defendant's motion as to the count charging him with rape, but overruled it as to the counts charging him with kidnapping and murder. Upon the trial of the case, the evidence introduced on behalf of the State made substantially the following case: The

kidnap victim, a young girl, seventeen years of age, a high school senior, was employed on a part-time basis at the Southern Bell Telephone Exchange located on East Lake Drive, Decatur, DeKalb County, Georgia. On August 18, 1969, at approximately 3:15, she drove her red Volkswagen automobile into the parking lot adjacent to the said telephone exchange and was preparing to alight therefrom to go to work when she was approached by two Negro men, one of whom, the accused, placed a knife against her stomach and ordered her to "slide over," telling her that if she would keep her mouth shut she wouldn't get hurt. The two men entered her car and the accused drove the automobile from the aforesaid parking lot while the other, identified as Benjamin Franklin Edwards, rode in the back seat with the girl in the front. At one point, the automobile was stopped and the girl was forced to get into the back seat. She was driven to a secluded spot located in DeKalb County where she was forced to disrobe and forceably raped by Benjamin Franklin Edwards. She was then permitted to put her clothes back on and taken by the two men to another spot in DeKalb County after making several intermediate stops where she was again raped by Edwards and forced by him to submit to an unnatural sex act. Following that, the accused and Edwards resumed a previous argument in which they had been engaged which was culminated by the accused stabbing Edwards twice in the abdomen with a pocket knife. Edwards staggered from the immediate scene and his body was later found by police officers a short distance therefrom. Thereafter, the kidnap victim, who was, of course, the chief witness for the State, was taken by the defendant under continuous threat in the form of a constantly exhibited knife to different places in DeKalb and Rockdale Counties. She was taken to the residence of people known to the accused where she was compelled to spend the night under the explanation by the accused to them that she and the accused were husband and wife. That residence was located in Rockdale County, and while there the accused forced her to submit to sexual relations on at least three separate occasions, all the while constantly holding a knife on her and threatening to kill her if she made an outcry or complaint. The next morning, she was carried to a number of other places located in Rockdale County, still under the same

threat, returned to the same house where she had spent the night, and there held until she was finally rescued by the Sheriff of Rockdale County bursting into the house as the defendant exited from the rear thereof and fled the scene. The testimony of a man who observed a struggle between the girl and Edwards in the rear seat of her car as it was being driven along an expressway, followed the car, noted its tag number and reported what he had seen to the police, of police officers, the sheriff and of medical witnesses was introduced by the State in corroboration of the testimony of the principal witness. The defendant testified under oath, his defense being in substance that it was Edwards who perpetrated the kidnapping, if there was a kidnapping at all, that he did not know that Edwards and the girl were not friends, and that he thought that the girl voluntarily and willingly accompanied Edwards. The defendant denied that he had sexual relations with the girl at any time, or that he ever exercised any force or made any threats to compel her to accompany him or Edwards. The jury found the defendant guilty on each of the counts on which he was tried. The court passed a sentence of death by electrocution as to each of those counts, and the defendant's motion for a new trial having been overruled he appealed to this court enumerating 30 grounds of alleged error.

Such other facts as may be necessary to a clear understanding of the rulings made will be set forth in the opinion.

■ The crimes with which the defendant was charged were committed on the 18th day of August, 1969, which was after the effective date of the Criminal Code of Georgia (Ga. L. 1968, pp. 1249 et seq., as amended by Ga. L. 1969, pp. 857 et seq.). Subsection (b) of *Code* § 26-506, as rewritten by those Acts, provides, "If the several crimes arising from the same conduct are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution except as provided in subsection (c)." Subsection (c) of that Code section reads: "When two or more crimes are charged as required by subsection (b), the court in the interest of justice may order that one or more of such charges be tried separately." Counsel for the accused, when the case was sounded for trial, filed a written motion to require the

State to elect on which of the three charges it would try the accused, to wit, kidnapping, murder or rape. The court ordered the count charging rape stricken but permitted the case to go to trial on the other two counts. That ruling is made the subject of two grounds of enumerated error.

Prior to the 1968 Criminal Code of Georgia the law with respect to the joinder in one prosecution of multiple offenses was clearly and succinctly stated in the case of *Gilbert v. State*, 65 Ga. 449, 450, as follows: "A general rule in criminal pleading is that a defendant cannot be charged with separate offenses in the same indictment, as for instance larceny in one count, and perjury in another, for it would embarrass him in his defense, but the same offense, that is the same species of offense, may be charged in different ways in several counts to meet the evidence. . . Offenses differing from each other may be included in the same indictment, provided they are of the same nature and differ only in degree. . . There are some offenses, however, though they may not be of the same nature, yet may be incorporated in the same indictment, if they constitute but *one transaction;* of this class is burglary and larceny, if committed at the same time. But as they are not similar in character they can never be joined except when blended by the concurrent acts of the offender, and even then it is done more to fix and establish the burglary than to charge the larceny."

The defendant in that case was charged in a 2-count indictment with burglary, larceny from the house and receiving stolen goods knowing the same to have been stolen. She did not demur to the indictment but made a motion to require the State to elect upon which count it would proceed. The judgment of the trial court denying that motion was reversed by the Supreme Court, apparently on the theory that the first count charged the defendant with a felony, while the second count charged her with a misdemeanor and because the offenses were wholly dissimilar from one another in their nature and characteristics, one being accomplished by the presence and use of active force in breaking and entering, while in the other there is an utter absence of every element of burglary, as well as a transaction totally distinct in time, place, circumstances, grade and punishment. The Court of Appeals has on at least two occasions refused to follow the reason-

ing of that case with respect to charges of burglary and receiving stolen goods on the idea that the legislature had since made the crime of receiving stolen goods a felony and that it was therefore permissible to join in one indictment counts charging the two separate and distinct offenses. See *Benford v. State,* 39 Ga. App. 826 (1) (148 SE 608), and *Ivester v. State,* 75 Ga. App. 600 (44 SE2d 61). However, no case has been called to our attention, nor have we found one, where the joinder of multiple offenses in one indictment did not involve either offenses that might be committed in different ways and so charged to meet the evidence or offenses of the same nature differing only in degree where the lesser offense would necessarily be included in the greater, or those cases where the commission of the second offense is part and parcel of the first, though the two offenses are separate and distinct. In this latter category may be placed such offenses as forgery and the uttering of the forged instrument. *Hoskins v. State,* 11 Ga. 92 (1), and *Sims v. State,* 110 Ga. 290 (34 SE 1020). Samples of other cases which this court and the Court of Appeals have held under the former law may be properly joined are robbery by force and robbery by intimidation (*Long v. State,* 12 Ga. 293 (3)) (crimes of different grades); an indictment charging the defendant in separate counts with the offenses of fornication, adultery, and adultery and fornication (*Sutton v. State,* 124 Ga. 815 (1) (53 SE 381)); rape and assault and battery, and rape and an attempt to commit rape (*Stephen v. State,* 11 Ga. 225; *Mitchell v. State,* 6 Ga. App. 554 (65 SE 326)); assault with intent to murder and pointing a pistol at another (*Williams v. State,* 72 Ga. 180).

The only case which we have found seeming to depart from the rigorous restrictions of the foregoing rule is the case of *Webb v. State,* 177 Ga. 414 (170 SE 252) wherein this court answered a certified question of the Court of Appeals as to whether an indictment was subject to demurrer for a misjoinder where it charged in five separate counts four separate robberies and one separate attempt to rob committed at different times and places upon different persons, there being no allegation therein that the separate offenses charged had some continuity of purpose or intent so as to make them a part of a general plan or scheme. This court answered the question in the negative expressly disclaiming therein

any intention of deciding the question as to the duty of the trial court to require an election by the prosecutor as to the count or counts upon which he would proceed or as to any right of the defendant to insist upon such an election. The Court of Appeals in its opinion in the same case conforming to the instruction of this court contained in the answer to the certified question held that it is well settled law that in passing upon the motion to require an election it is within the sound discretion of the court to require or not require the solicitor general to elect upon which count he will proceed, citing as authority for that ruling, *Gilbert v. State,* 65 Ga. 449; *Lascelles v. State,* 90 Ga. 347 (4) (16 SE 945, 35 ASR 216); *Mitchell v. State,* 6 Ga. App. 554, supra; *State v. Hogan,* R. M. Charlton 474; and other cases of the Court of Appeals and foreign authorities. *Webb v. State,* 47 Ga. App. 505 (170 SE 827). However, it is our view that none of the authorities cited by the Court of Appeals supports the conclusion there reached that the trial court's discretion under the former law was so broad as to permit the State to go to trial over a proper and timely objection of the defendant invoking a ruling to require the prosecutor to elect, on an indictment charging entirely separate and distinct offenses in no way connected except that as charged they may have been committed by the same person. No case has been cited to us by counsel for the State and we have found no decided case supporting such a conclusion. To be sure, there are cases reported in the reports of both this court and the Court of Appeals wherein the accused *was* tried on just such multiple count indictments as here involved, but in those cases no objection was raised by the accused to this procedure, and we are satisfied that in the absence of such an objection the right of the accused to insist on the election by the State may be said to have been waived.

We thus have presented for the first time the question as to the legislative intent in enacting new *Code* § 26-506, particularly paragraphs (b) and (c) thereof above quoted, viewed in the light of the law as it stood at the time of its enactment. In making this determination, it is significant to note that the legislature used language in subsection (b) making the prosecution together of multiple charges mandatory where rules relating to venue permit and the crimes are known to the proper prosecuting officer, and

used language in subsection (c) making it merely permissive for the court to order separate trials in the interests of justice. Formerly the judge had a discretion to order separate trials, but his discretion was abused if the separate counts involved different species of felonies or crimes of a different nature requiring different kinds of evidence to prove guilt. This test no longer need be applied. The only test under the new Criminal Code is whether the interests of justice will be served by ordering separate trials. The judge may order the charges tried separately but he is not required to do so if in his opinion the interests of justice will not be served thereby. We think the trial court in this case was justified under the facts of the case in concluding that the interests of justice would not be served by ordering separate trials. The evidence for the State in the case shows a forceable kidnapping of the chief witness for the State by the accused and by the victim of the murder, a continuing abduction and retention in custody under force and threats of force by the accused and by the murder victim for several hours, two forceable rapes of the witness by the murder victim with the accused standing by aiding and abetting in those rapes and contributing to the force of the witness's detention and submission thereto, an argument between the accused and the murder victim immediately following the second rape culminating in the unprovoked stabbing of the murder victim by the accused, a continuation of the forceable detention of the witness by the accused under threats clearly exhibited by the accused for several hours thereafter, including at least three separate rapes of the victim before her release upon the approach by a police officer and his entry into the house where the witness had been detained by the accused. From the nature of the entire transaction it would be almost impossible to present to a jury evidence of one of the crimes without also permitting evidence of the other crimes to be introduced since they were all a part of one continuous transaction covering a period of 18 to 20 hours. We are inclined to think that, contrary to the appellant's contention, the interest of justice would more nearly be served by trying both of the charges here involved together, and that, under the circumstances of this case, the trial court followed the mandate of the law and was at least authorized to find that the interest of justice

would best be served by denying the motion to require the State to elect. It follows that the grounds of enumerated error Nos. 2, 4, 20 and 26 are without merit.

■ During the trial of the case, the defendant developed by cross examination of the chief witness for the State that she had made a written statement which she had signed on the afternoon of the day on which she was rescued from her kidnapper. Counsel for the accused ascertained that this statement was in the possession of the district attorney and she asked if she could see it. The district attorney refused to surrender the statement voluntarily and upon application to the court for an order directing the production of the statement the court refused to grant the same. This action is made the basis of grounds 3 and 16 of the enumerated errors and of one ground of defendant's "Post Conviction Motion" to set aside the verdict of guilty. In support of these grounds, appellant cites and relies on the ruling in five Federal cases, to wit, Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215); Powell v. Wiman, 287 F2d 275 (CCA 5, 1961); Barbee v. Warden, 331 F2d 842, 846 (CCA 4, 1964); Ellis v. United States, 345 F2d 961 (CCA, DC, 1965); and Levin v. Clark, 408 F2d 1209 (CCA, DC, 1967). This case, however, is unlike any of those cases in that there is no contention or assertion by appellant here that his conviction was obtained by false testimony, or that unfair methods were used by the prosecutor to obtain a verdict of guilty. In this respect, the distinctions pointed out by this court in *Brown v. State,* 224 Ga. 389, 390 (162 SE2d 349) between the facts in that case and the facts in the cases relied upon by the appellant in that case apply here. There is no contention by appellant here, nor was any contention made in the trial court, that the denial to the accused of access to the written statement of the witness impinged upon his constitutional rights in any respect, and we do not pass upon any such question here. There is no Georgia statute nor rule of practice which requires the district attorney to open his files to the attorney for the accused, nor is the accused entitled as a matter of right to receive copies of police reports and investigation reports made in the course of preparing the case against the client. *Walker v. State,* 215 Ga. 128, 130 (109 SE2d 748); *Blevins v. State,* 220 Ga. 720 (2) (141 SE2d 426); *Williams v. State,* 222 Ga. 208,

211 (149 SE2d 449); *Jones v. State,* 224 Ga. 283, 284 (161 SE2d 302); *Brown v. State,* supra; *Holmes v. State,* 224 Ga. 553, 562 (163 SE2d 803); *Mahone v. State,* 120 Ga. App. 234 (1) (170 SE2d 48).

■ In ground 5 of appellant's enumeration of errors, complaint is made that the court erred in qualifying the jury and in excluding for cause six named jurors who stated on their voir dire that they were conscientiously opposed to capital punishment. The record shows that each of the jurors named by the appellant was asked this question: "Are you prepared to consider fairly and fully the death penalty as one of the penalties provided by the laws of the State of Georgia as punishment for those found guilty of certain offenses and to vote to impose it should the facts and circumstances of this case so warrant?" Each of the prospective jurors who were excluded for cause by the State as complained of in this ground of enumerated error answered this question in the negative, and by his answers to other questions propounded by the district attorney and by counsel for the defendant made it plain that he would in no event, and regardless of what the evidence might show, return a verdict imposing the death penalty. Their exclusion by the trial court was clearly authorized by the ruling in Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776). See *Whisman v. State,* 224 Ga. 793 (164 SE2d 719), and *Walker v. State,* 226 Ga. 292 (1) (174 SE2d 440). This ground of enumerated error is without merit.

■ Count 1 of the indictment upon which the accused was tried was drawn under the provisions of the Criminal Code of Georgia, and charged the defendant with kidnapping in violation of *Code Ann.* § 26-1311. The punishment for kidnapping as fixed by this Code section is not less than 1 nor more than 20 years provided that in the case of kidnapping for ransom and in those cases where the person kidnapped shall have received bodily injury the person convicted shall be punished by life imprisonment or by death. This count after charging kidnapping in the language of the statute alleges that the accused after having abducted and stolen away the kidnapped victim did commit bodily injury to her by having carnal knowledge of the said victim (naming her) forcibly and against her will. No demurrer or objection to this count of the

indictment or to its form was filed, but during the trial defendant made a motion for a mistrial on the ground that the reading of this indictment to the jury was prejudicial to the defendant in that it implied the commission of another and distinct crime with which he was not charged, to wit, rape. Basically, the same contention was embodied in ground 2 of defendant's "Post Conviction Motion" to set aside the verdict of guilty. In ground 11 of the enumeration of errors, it is contended that the court erred in admitting in evidence the testimony of the doctor who examined the kidnap victim for evidence of rape as to his findings on making such examination over the objection that such evidence was irrelevant to the crime for which the defendant was on trial. In ground 12, the contention is made that the court erred in instructing the jury that such evidence was admitted for whatever light it might throw on the charges of kidnapping and murder and for no other purpose. There is no merit in any of these contentions. The State simply alleged in the indictment the way and manner in which bodily harm was inflicted upon the kidnap victim. If the defendant felt that these allegations were prejudicial, it was incumbent upon him to move to have them stricken from the indictment before the trial commenced. His failure to do so waived any objection he may have had to the form of the indictment. *Hill v. State,* 41 Ga. 484 (2); *Thomas v. State,* 69 Ga. 747; *Frady v. State,* 212 Ga. 84 (1) (90 SE2d 664). Evidence to prove all the elements of the crime charged was admissible, and the objections of the defendant to the evidence of the medical witness were properly overruled.

The foregoing also disposes of the merits of the contention of the appellant contained in the 7th ground of enumerated error relating to the opening statement and arguments of the district attorney wherein appellant objected to the district attorney imputing to the accused another and different crime from that with which he was charged in the two counts of the indictment upon which he was on trial.

■ The State offered in evidence five black and white photographs of the deceased taken at the scene where the body was found, such photographs showing the conditions at the scene, the condition of the deceased's body, the wounds inflicted upon him and other details. Counsel for the defendant objected to the intro-

duction of these exhibits on the ground that the defendant had admitted the death of the deceased and that defendant had done the killing, and further that the killing was justifiable homicide and that therefore the pictures introduced were solely for the purpose of inflaming the minds of the jury and to prejudice the case against the defendant. The court overruled that objection and that ruling is made the basis of the 8th ground of enumerated error. The State also offered in evidence a 6th photograph of the deceased, apparently taken in the morgue with his clothes removed and showing clearly the wounds inflicted upon his body. This was admitted over substantially the same objection as to the other photographs and that ruling is assigned as error in the 19th ground of enumerated errors. Under repeated rulings of this court, the admission in evidence of these photographs over the objections made was not error. *Smith v. State,* 202 Ga. 851, 866 (45 SE2d 267); *Brown v. State,* 206 Ga. 73, 74 (55 SE2d 574); *Hill v. State,* 211 Ga. 683 (3) (88 SE2d 145); *Walker v. State,* 216 Ga. 15 (3) (114 SE2d 431); *Jackson v. State,* 225 Ga. 39, 47 (165 SE2d 711); and *Johnson v. State,* 226 Ga. 511, 512 (175 SE2d 840).

The State also offered in evidence its Exhibit 9, a knife which was admitted over the objection of counsel for the defendant that there was no evidence that the knife was the death weapon and no evidence that the knife was the defendant's knife. This objection was plainly without merit. The chief witness for the State identified it as the knife with which the defendant stabbed the murder victim, and as being the same knife which she was forced by the defendant to clean later that night at the house where she was held by the defendant. There was evidence on behalf of the State that the defendant subsequently pawned the knife and that it was recovered by the police officers upon information furnished them by the defendant. The defendant admitted that the knife was his. This objection was patently without merit and the trial court did not err in overruling it.

The State also introduced in evidence a bag of clothing which was clearly identified by the chief witness for the prosecution as being the clothing which she wore at the time she was kidnapped and which bore no bloodstains at that time. There was evidence that she bled from the effects of the repeated rapes perpetrated

upon her by the defendant and by the deceased and that blood stained her dress and the seat of her car. She testified that at one time during her ordeal she was forced by the defendant to participate in attempting to clean the blood from the seat of her automobile. The objection to the introduction of this clothing on the ground that there was no evidence that the stains on the clothes were caused by the defendant and that the evidence was irrelevant and immaterial, was not sound and was properly overruled by the trial court. It follows that the 8th and 19th grounds of enumerated error show no cause for reversal.

■ In his direct examination of one of the police officers who had investigated the kidnapping, the district attorney questioned him with respect to information which he had received concerning the automobile of the State's principal witness being reported as a wanted car, it appearing that another witness had observed the kidnapped victim in the car engaged in a struggle with one of the men and had noted the tag number and had reported to police that something unusual was going on. Counsel for the defendant objected to one of the questions propounded by the district attorney to the witness on the ground that the same called for hearsay evidence. The court overruled that objection. However, the witness did not answer the question objected to, but the district attorney propounded another question to which no objection was made. Under these circumstances, ground 9 of the enumeration of error, which complains of the ruling of the court on the objection to the question as above set forth, does not show harmful or reversible error.

■ Three grounds of enumerated error, to wit, 10, 13 and 15 complain of the refusal of the court to grant a mistrial on the occasion of three separate motions therefor made by counsel for the defendant. The first of such motions was made on account of the district attorney's use of the word "kidnapping" in examining a witness, and his use of that word in the course of a colloquy between the court and counsel during arguments on an objection to evidence made by counsel for the defendant. In response to the defendant's motion for a mistrial in this regard, the court admonished the district attorney that he should use the word "alleged" in connection with the use of the word "kidnapping." Thereafter,

in his instructions to the jury, the judge fully and completely instructed the jury that the burden was upon the State to prove the charges made in the indictment beyond a reasonable doubt, and he fully defined the term "kidnapping." No harmful error resulted from employment of this term by the district attorney, especially in view of the admonition of the court and the later instructions to the jury.

The other two grounds of defendant's motion for a mistrial related to evidence of the defendant's flight and to evidence of his intoxicated condition at the time of his apprehension. In this connection, exception is also taken to the charge of the court on the subject of flight. None of these grounds is cause for reversal. It is well established that "evidence as to the time when and the place where arrested, the manner of the arrest, how the accused was armed, and whether he resisted, and all the circumstances connected with the arrest, are proper matters to be submitted to the jury to be weighed by them for what they are worth. *Wayne v. State,* 56 Ga. 114, 119 (5); *McClung v. State,* 206 Ga. 421, 423 (57 SE2d 559)." *Clements v. State,* 226 Ga. 66 (1) (172 SE2d 600). See, also, to the same effect, *Wooten v. State,* 224 Ga. 106 (5) (160 SE2d 403), where it was expressly held that evidence as to the defendant's intoxicated condition when arrested was properly submitted to the jury. None of these grounds is cause for a reversal.

■ Grounds 14 and 17 of the enumeration of errors complain of the admission in evidence and the reading to the jury of the defendant's confession on the ground that the same was involuntary. There is no merit in this contention. The witnesses for the State testified that the defendant was fully informed of his rights, that he freely and voluntarily made a statement which was reduced to writing and that he was offered no hope of reward if he made a statement nor threatened with any punishment if he refused to make a statement. Under these circumstances, it was not error to admit the statement in evidence, and the court properly instructed the jury that they should not consider the statement unless they found the same to have been freely and voluntarily made.

■ Two grounds of enumerated error complain of the refusal of the court to charge the law with respect to voluntary manslaugh-

ter and the law with respect to involuntary manslaughter. This contention is apparently based on the sworn testimony of the defendant to the effect that he sought to remonstrate with the deceased as to his treatment of the girl at which time the deceased asked, "What are you going to do, you black son of . . .? I'll kill both of you all. So, he jumped out of the car and he had his hands in his pockets and he already done shot two police down in his home town, in Washington, Georgia, where he had come from. And, I said, man, you ain't got— you ought not do the girl like that. He said, you ain't got a . . . thing to do with it. Anything. He jumped out of the car and slapped me across the forehead, breaking my glasses . . . And, I backed about four or five feet and he kept walking toward me and so, I stuck him and he run on down. Q. Then, you were in fear for your life? A. Sure did. I backed four or five feet and he kept following me. Q. Did the other fellow have a knife? A. He had a knife. He said he had a pistol, too."

Under the 1968 Criminal Code of Georgia, voluntary manslaughter is the killing of another human being solely as the result of a sudden, violent and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person. Involuntary manslaughter is the killing of another human being without any intention to do so in the commission of an unlawful act other than a felony and in the commission of a lawful act in an unlawful manner likely to cause death or great bodily harm. *Code Ann.* §§ 26-1102 and 26-1103. Under the evidence and the sworn testimony of the defendant, neither of these offenses was involved in this case. The eyewitness of the killing testifying for the State made a case of a cold-blooded, unprovoked killing. The sworn testimony of the defendant as set forth above made a plain case of justifiable homicide under the provisions of *Code Ann.* § 26-902. In other words, under the evidence the defendant was either guilty of murder or nothing and a charge on manslaughter was not authorized. *Brookins v. State,* 100 Ga. 321 (1) (28 SE 77); *Morgan v. State,* 108 Ga. 748 (32 SE 854); *James v. State,* 123 Ga. 548 (1) (51 SE 577); *Devereaux v. State,* 125 Ga. 740 (54 SE 666). Under the provisions of § 26-902 of the Criminal Code of Georgia, one who is assaulted by another need no longer stop and make a determination as to whether the assault consti-

tutes an attempt to commit a felony upon him or a mere misdemeanor upon him but may use such force in defense of his person as seems to him to be necessary even though such force may be intended to, or likely will, cause death or great bodily harm to the other. If the person assaulted reasonably believes that such force is necessary to prevent death or great bodily injury to himself or to prevent the commission of a forceable felony upon him he will be justified. Cf. *McDaniel v. State,* 209 Ga. 827, 834 (76 SE2d 500).

Another ground of enumerated error complains of the refusal of the court to charge three requests of the defendant relating to killing by accident or misfortune. Killing by accident or misfortune was clearly not involved in the case and it was not error to refuse the requests in that regard. This ground also complains of the refusal of a request to charge in the language of the headnote in *Thornton v. State,* 119 Ga. 437 (46 SE 640), as follows: "To constitute one a principal in the second degree, he must not only be present when the crime is committed, but must aid and abet the actual perpetrator of the crime. One who is present when a crime is committed, but neither assists in its commission nor shares in the criminal intent of its perpetrator, is not guilty as a principal in the second degree." The terminology of this latter request was inapt under §§ 26-801 and 26-802 of the Criminal Code of Georgia, and, for this reason if for no other, it was not error for the trial court to refuse to instruct the jury in the language requested.

■ The admission in evidence of the testimony of a medical witness as to his findings on examination of the clothing identified as that having been worn by the State's principal witness when she was kidnapped by the defendant and the deceased was not error.

■ Grounds 21, 28, 29 and 30 complain in effect that the evidence did not authorize the verdict and that the State failed to prove venue. It is sufficient to say that the evidence of the State's principal witness and the corroborating evidence of numerous other witnesses introduced on behalf of the State, if believed by the jury, amply authorized the verdict finding the defendant guilty of kidnapping and murder. The evidence showed without dispute that the State's principal witness was abducted and held against her will by the defendant and Benjamin Franklin Edwards in DeKalb County and that the place where the defendant stabbed

Edwards and the place where his body was found were also in DeKalb County. There is no merit in any of these grounds of enumerated error. The evidence authorized the verdict and the trial court did not err in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concur.*